IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
OCT 2 2 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Respondent, | : | Crim. Action No. 96-0045(PLF) |
| v. | : | Civil Action No. 07-0705(PLF) |
| RICO MC LAUGHLIN, | : | |
| Pro se-Movant. | : | |

Application for a Certificate of Appealibility

To: The Honorable Judge Paul L. Friedman, U.S. District Judge:

I.                              **Introduction**

**And Now Comes,** Rico Mc Laughlin, pro se-Appellant, moving this Court in the first instance for the issuance of a COA, i.e., hereinafter as "Appellant" asserting that jurists of reason could find it debatable (or, for that matter) the July 23, 2007 and September 10, 2007, orders wrongly decided and could have been resolved in a different manner.

II.                             **Jurisdiction**

This Court's authority to adjudicate this COA derives from Rules 1(a)(2) and 22(b) of the Federal Rules of Appellate Procedure ("Fed.R.App.P."), which "prescribe the method by which the jurisdiction [28 U.S.C. § 2253(c)(1)(B)] granted the courts by Congress is to be exercised." Kontrick v. Ryan, 540 U.S. 443, 454 (2004).

III.                    Background 1/

Appellant initiated his first 28 U.S.C. § 2255 motion on April 11, 2007, i.e., within one-year of the judgment of Holmes, supra, of the official notice that: "the right to a meaningful opportunity to present a complete defense," extended to evidentiary rulings amongst other things was judicially enforceable.

On July 23, 2007, the district court sua sponte denied the motion as time-barred absent party representation and abdication of its duty to make findings of fact and conclusions of law. That is, after examining the motion and the record of prior procedings.

On July 31, 2007, Appellant timely motioned the Court under Rules 52(b) and 59(e), Fed.R.App.P., assigning errors to the July 23, 2007 Order, which interposed between Appellant and exercising his statutory right to sue for his liberty.

On September 10, 2007, the district court maintained its interposition between Appellant exercising his statutory right to sue for his liberty by denying Appellant's Rule 52(b) and 59(e) motion under the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

This request for a COA follows in order to obtain an independent assessment of this Court's resolution of Appellant's timeliness in bringing the grounds for relief.

IV.        **Pursuant to 28 U.S.C. § 2253(c)(2) and (3) Requirements of a Substantial Showing of a Denial of Constitutional Right.**

    1.   The District Court's Sua Sponte Ruling on July 23,

---

1/     Familiary with the facts and procedural history of this case is assumed.

2007, Was Erroneous, While It Acknowledged the Existence of the Holmes v. South Carolina, 126 S.Ct. 1731 (2006)'s Judgment, The Court Gave No Dispositive Effect To That Judgment. Thereby, Eroding Party Representation Under Rule 5, Rules Governing Section 2255 Regulating The Right For A Federal Prisoner To Sue For His Liberty.

  a. **Substantial Showing of the Denial of a Constitutional Right:**

   i. **Constitutional Showing**

On April 11, 2007, via prison mailbox rule, Appellant submitted five (5) grounds demonstrating he was denied "a meaningful opportunity to present a complete defense," for example:

First, prior to trial, evidence of third party culpability was excluded by the court in favor of the Government's request, which at the time of the court's decision on November 4, 1996, the right to "a meaningful opportunity to present a complete defense" did not extend or was not recognized to extend to "third party culpability." It was inherently unknowable until the case Holmes v. South Carolina, 164 L.Ed2d 503, 509 (2006), that the presentation of a "third party culpability" was a judicially enforceable right. See Medellin v. Dretke, 544 U.S. 660, 665 (2005) analogous to this Court's prior ruling. The Medellin Court initially ruled that: "[T]he Vienna Convention did not create individual, judicially enforceable rights and that state procedural default rules barred Medellin's consular access claim." Id. at 665. However, the subsequent Avena judgment and the President's Memorandum, which were not available at the time of his first state habeas action provided an unencumbered bases for issues that arose from the procedural posture of his action, id. at 664, n.1. Similarly,

3.

Holmes was not available during the one-year period that Appellant's judgment became final.

Second, for the reasons stated above, the Holmes' Court revived its prior judgments in its holding by giving official notice: "Whether rooted directly in the Due Process Clause of the [Fifth] Amendment ... the Constitution guarantees criminal defendant's 'a meaningful opportunity to present a complete defense,'" id. at 509. Unlike dismissals based upon technicality, the Superior Court made a finding of no probable cause as to the identity of Appellant; which was an element of all the charges against Appellant under the District of Columbia and Federal Laws. Moreover, laws under District of Columbia and the United States are legislated by the same legislator, Congress. Hence, Appellant was subjected to jeopardy twice by the same sovereignty in which the "Fifth Amendment privilege could be raised as a defense to a criminal prosecution." See United States v. U.S. Coin & Currency, 28 L.Ed2d 434, 437 (1971).

Third, for the reasons stated above, the Holmes case revived its judgments relating to the Confrontation Clause. In Appellant's case, the evidentiary ruling which was admitted over counsel's objection, part or the essence of a letter, see Trial Transcripts, pages 24-25, November 4, 1996, and pages 30-31, November 4, 1996. Through a government witness, the ruling was exploited and the identity of its drafter prejudicially expose to the jury. That is, linking the letter to "Mr. Cool," implicating someone else the victim had informed upon and was arrested and was reaching out to alert his cohorts. Whether by syllogism or enthymeme our adversary system Appellant was entitled to confront "Mr. Cool" as part

4.

of "a meaningful opportunity to present a complete defense."

Fourth, and Fifth Grounds for the reasons stated above, the Holmes' case revived its judgments in different aspects under the Fifth, Sixth and Fourteenth Amendments, i.e., including the Counsel Clause of the Sixth Amendment enforceable through the Due Process Clause. For example, in United States v. Cronic, 466 U.S. 648, at 653 (1984), the exception to Strickland v. Washington, 466 U.S. 674 (1984), general ineffective assistance of counsel standard, the Supreme Court recognized: "Lawyers in criminal cases 'are necessities, not luxuries.' Their presence is essential because they are the means through which the other rights of the person on trial are secured." Id. at 653 (1984). Under the Fifth Amendment the right not to be subject to jeopardy twice for the same offense twice abort[s] the trial itself. See Arizona v. Fulminante, 499 U.S. 279, 310, (1999)(Listing structural errors that abort the trial). Counsel fail to protect Appellant's right not to be subject to jeopardy twice is a distinct right from the double jeopardy clause and each rates as different grounds for a violation under Holmes, supra.

Contrary to the Court's disparaging statement: "Fourth, be reiterates his contentions that he is being subjected to double jeopardy." The Supreme Court in Sanders v. United States, 373 U.S. 1, at 16 (1963), gave instructive guidance on identical grounds: "In other words identical grounds may often be proved by different factual allegations. So also, identical grounds may often be supported by different legal arguments." Id. at 16.

>    ii. **Procedural Showing That Jurists of Reason Could Find The July 23, 2007 Order Debatable (Or For That Matter) Wrongly Decided**

5.

On July 23, 2007, the district court sua sponte determined that Appellant's motion under 28 U.S.C. § 2255 was time-barred, i.e., contrary to the teachings of Day v. McDonough, 164 L.Ed2d 376, 382 (2006)("Before acting sua sponte, a court must accord the parties fair notice and an opportunity to present theif positions."). This practice was binding on the district court as a matter of law, i.e., 28 U.S.C. § 2072(a). See Henderson v. United States, 134 L.Ed2d 880, at 893 (1996): "[A] Rule made by Congress supercedes conflicting laws no less than a Rule this Court prescribes." The district court abdicated its duty of the practice dictated by Day.

### iii. Limitation Period is an Affirmative Defense

The Day Court, supra at 386-88 and n.11, explicitly recognizing the limitation period of the AEDPA as an "affirmative defense" under Habeas Rule 5(b) and Fed.R.Civ.P. 8(c), citing Habeas Rule 11 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). Under Rules Governing Section 2255 proceedings, Rule 12 contains the same language. The Civil Rules supplement the statutory procedures for habeas corpus proceedings, See Mayle v. Felix, 125 S.Ct. 2562, 2569 (2005) (Citing Fed.R.Civ.P. 81(a)(2)); Caldwell v. Dretke, 429 F.3d 521, 527-28 (5th Cir. 2005)(same); Gonzalez v. Sec't For Dept. of Corrections, 366 F.3d 1253, 1270 (11th Cir. 2004)(same); Miranda v. Bennett, 322 F.3d 171, 175 (2nd Cir. 2003).

Finally, on this point, the Supreme Court in Arizona v. California, 530 U.S. 392, at 394-395 (2000) issued a precaution to the lower courts: "Where no judicial resources have been spent on

6.

the resolution of a question, trial courts must be cautious about raising a preclusion bar sua sponte, thereby eroding the principle of party presentation so basic to our system of adjudication. No doubt, the district court's arbitrary conduct interposed between Appellant and his right to exercise 28 U.S.C. § 2255 to sue for his liberty. Cf. Smith v. Bennett, 365 U.S. 708, 709 (1961)("We hold to interpose ... between ... prisoner of the state and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the law."). Under the Fifth Amendment, the Due Process Clause and Equal Protection converged.

    2. On September 10, 2007, the District Court Continued to Interpose Through Error Between Appellant's Statutory Right to Sue for His Liberty Where no Judicial Resources Have Been Spent on the Resolution of the Constitutional Issues Before the Court.

        a. **Substantial Showing of the Denial of a Constitutional Right:**

           i. <u>Constitutional Showing</u>

See part IV, 1. (a)(i), which such grounds are the same.

           ii. **Procedural Showing That Jurists of Reason Could Find The September 10, 2007 Order Debatable (or, for That matter) Wrongly Decided.**

Under Rule 52(b), Fed.R.Civ.P., if the Court has entered erroneous order it should correct it. See Golden Blount, Inc. v. Robert H. Peterson Co., 438 F.3d 1354, 1358 (Fed.Cir. 2006)(if the trial court has entered an erroneous judgment, it should correct it).

As a supplement to the Rules Governing Section 2255; Rule 12 authorizes the use of the Fed.R.Civ.P., Cf. Day, supra at 386. Rule 11(b), Fed.R.Civ.P., governs the representations to the Court by the parties and Rule 11(c) governs sanctions. Appellant is being

7.

sanctioned by the Court's abolishment of Rule 52(b) and 59(e), Fed.R.Civ.P., i.e., in response to this Court's July 23, 2007 Order. Cf. Tennessee v. Lane, 541 U.S. 509, 532 (2004)("This duty to accommodate is perfectly consistent with the well established due process principle that, 'within the limits of practicability, a State must afford to all individuals a meaningful opportunity to be heard' in its courts.'"). This Court effectively denied Appellant an opportunity to be heard in his response to the July 23, 2007 Order.

On September 10, 2007, Appellant received an order that failed to address any of the assigned errors in response to Appellant's Rule 52(b) and 59(e) motion. Such continuing to interpose through error Appellant's exercise of his statutory right to sue for his liberty under § 2255.

### iii. Merits of Appellant's COA

As this Circuit has held in U.S. v. Mitchell, 216 F.3d 1126, 1130 (D.C. Cir. 2000):

> "[T]he petitioner need not show that he should prevail on the merits ... Rather he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further."

In the instant case, as the Court recognized Appellant's case became final on April 19, 1999. The judgment announced in Holmes v. South Carolina, supra giving notice to criminal defendants that their right to "a meaningful opportunity to present a complete defense," embraced the right to present "third party culpability" as a defense, inter alia, see Medellin v. Dretke, Supra at 663-64:

8.

"Relying on this memorandum and the <u>Avena</u> judgment as separate bases for relief that were not available at the time of his first state habeas corpus action."

Similar to <u>Medellin</u>, during the one-year period, i.e., April 19, 1999 -- April 20, 2000, the <u>Holmes</u> judgment was not available "modifying" the inherent right to "a meaningful opportunity to present a complete defense" embraced "third party culpability "and a guaranteed individually enforceable right under 28 U.S.C. § 2255. Id. at 663-64.

The judgment in <u>Holmes</u> constitutes a fact as recognized in <u>Johnson v. United States</u>, 161 L.Ed2d 542, 552 (2005)("We agree with Johnson that the state court -- court vacatur is a matter of fact for purposes of the limitation rule in the fourth paragraph."). Herein, the circumstances shows the debatability whether the district court was required to follow <u>Johnson</u> as to the judgment in <u>Holmes</u> modifying <u>Crane v. Kentucky</u>, 426 U.S. 683 (1986). See <u>Dickerson v. United States</u>, 530 U.S. 428, 441 (2000):

> These decisions illustrate the principle --- not that Miranda is not a constitutional Rule ----- but that no consitutional rule is immutable. No court laying down a general rule can possibly foresee the various circumstances in which counsel will seek to apply it, and the sort of modifications represented by these cases are as much a normal part of constitutional law as the original decision."

In deeming Appellant's motion under § 2255 time-barred the Court stated: "It is apparent, then, that the Supreme Court in <u>Holmes</u> did not recognize a new right or make any new right retroactively to collateral attacks; it simply applied established law. The date of the <u>Holmes</u> decision, or any decision making it retro-

9.

active, therefore, is not the date from which the statute of limitation should run. The one-year statute of limitations therefore began to run from the date on which the judgment in this case became final, the date the Supreme Court denied certiorari in this case—April 19, 1999—and not the date on which <u>Holmes v. South Carolina</u> was decided.

The July 23, 2007 Order, according to <u>Medellin</u>, <u>supra</u>, <u>Johnson</u>, <u>supra</u> and <u>Dickerson</u>, <u>supra</u>, is patently wrong. It can not be disputed that <u>Holmes</u> represents a "modification" of a constitutional rule "unavailable" to Appellant between April 19, 1999 and April 18, 2000, to judicially enforce as an individual right. Id. at 665 (2005).

Furthermore, on September 10, 2007, the Court relying upon its analysis on July 23, 2007, abdicated its duty under Rule 52(b) and 59(e), Fed.R.Civ.P., the Court's discretion was invoked and it failed to exercise it by not addressing any of the assigned errors. <u>See</u> <u>Golden Blount, Inc.</u>, <u>supra at</u> 1358.

For all the above reason this Court should issue a COA as Appellant's substantive claims submitted to the district court.

Dated: September 25, 2007          Respectfully submitted,

*Rico Mc Laughlin*
Rico Mc Laughlin, Pro se.
Reg. No. 25326-016
U.S. Penitentiary Allenwood
P.O. Box 3000
White Deer, PA 17887-3000

10.